UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALPS SOUTH, LLC, a Florida corporation, ) Case No. 8:09-cv-00386-EAK-MAP

Plaintiff, )

-vs- )

THE OHIO WILLOW WOOD COMPANY, ) an Ohio corporation,
)

Defendant.

**MOTION OF PLAINTIFF, ALPS SOUTH, LLC, TO DISMISS INEQUITABLE CONDUCT COUNTERCLAIM AND TO STRIKE INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE**

Plaintiff, Alps South, LLC ("Alps"), pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), moves to dismiss the inequitable conduct counterclaim and to strike the inequitable conduct affirmative defense asserted by defendant, The Ohio Willow Wood Company ("OWW"), in its Amended Answer and Counterclaims to Alps' Supplemented Second Amended Complaint ("counterclaim") because OWW failed to state a claim upon which relief can be granted and pled an insufficient defense. OWW's Amended Answer and Counterclaims also assert counterclaims on the issues of infringement and invalidity that are not addressed in this motion.

**ALPS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE**

## I. INTRODUCTION

This memorandum is submitted in support of Alps' motion to dismiss OWW's inequitable conduct counterclaim and to strike its inequitable conduct affirmative defense under Fed. R. Civ. P. 12(b)(6) and 12(f) for the reasons that they fail to state a plausible claim for relief

and are insufficiently pled, particularly in light of recent authority from the United States Court of Appeals for the Federal Circuit on the issue of inequitable conduct.

At OWW's request, the Court stayed this action on March 15, 2011 after a final office action in the reexamination initiated by OWW before the United States Patent and Trademark Office ("PTO"), regarding the patent at issue, U.S. Patent No. 7,344,568 ("'568 patent"), rejected all of the relevant claims of the patent. After additional argument, an interview and a demonstration in the reexamination proceeding by the inventor, John Chen, on behalf of the owner of the patent, Applied Elastomerics, Inc. ("AEI"), the PTO issued a reexamination certificate on August 9, 2011 that confirmed the claims of the original patent with some minor amendments and added several new claims. On July 26, 2011, Alps filed its motion to lift the stay, which the Court granted on August 16, 2011. With leave of court, Alps filed and served a Supplement to Second Amended Complaint ("supplement") to assert that OWW is infringing certain claims set forth in the '568 reexamination certificate.[1]

OWW responded to the supplement by filing an answer and counterclaims. In its counterclaims, OWW seeks a declaratory judgment that it does not infringe any of the asserted claims, that the asserted claims are invalid, and that the '568 patent is unenforceable, because the inventor, John Chen, who is a registered patent agent entitled to practice before the PTO, engaged in inequitable conduct. The present motion addresses only OWW's inequitable conduct counterclaim and affirmative defense.[2]

OWW accuses Mr. Chen of inequitable conduct during the reexamination of the '568 patent. Its claim focuses on arguments he made to distinguish the invention claimed in the

[1] Attached to the Supplement are Exhibit 1, the '568 patent, and Exhibit 2, the '568 Reexamination Certificate.
[2] OWW's inequitable conduct affirmative defense incorporates the allegation of its inequitable conduct counterclaim. OWW's inequitable conduct counterclaim and affirmative defense will be referred to collectively as its "inequitable conduct counterclaim."

'568 patent from claims in an earlier Chen patent in the '568 patent's chain of priority, U.S. Patent No. 6,177,176 ("'176 patent"). OWW contends that Mr. Chen misled the PTO in arguing to the PTO during the prosecution of the original claims of the '568 patent that the claims of the '568 patent are distinguishable from the claims of the '176 patent, because, unlike the claims of the '176 patent, the claims of the '568 patent do not expressly claim block copolymers having a substantially crystalline polyethylene midblock segment, and by then failing to disclose in the reexamination that he made this argument when he argued that the '176 patent disclosure supports the claims of the '568 patent. (OWW Counterclaim, ¶¶ 24-29). OWW asserts that during the reexamination of the '568 patent Mr. Chen argued that SEEPS, as disclosed in the '176 patent, supports the claims of the '568 patent and that his argument is misleading, because Mr. Chen only discusses SEEPS in the '176 patent as having a substantially crystalline polyethylene midblock segment. (*Id.*) So, according to OWW, if Mr. Chen pointed this out, the examiner would have rejected the reexamined claims either on the grounds of double patenting or because there is no support in the '176 patent for the claims of the '568 patent. (*Id.* at ¶¶ 33-34). According to OWW, the '176 patent disclosure does not support the reexamined claims of the '568 patent and, therefore, these claims have a priority date based on the filing of the '568 patent application, April 21, 2003, which it asserts would render these claims unpatentable. (*Id.* at ¶¶ 31-32).

Significantly, there is no allegation in OWW's inequitable conduct counterclaim that Mr. Chen deliberately failed to disclose a prior art reference that was material to patentability with the intent to deceive the PTO. There is no allegation that Mr. Chen engaged in affirmative egregious misconduct in prosecuting the reexamination of the '568 patent. The assertion is that Mr. Chen made <u>arguments</u> to the reexamination examiner about a disclosed

reference that OWW contends are inconsistent with arguments he previously made during the prosecution of the original '568 application. (*Id.* at ¶¶ 28, 35-38).

OWW's inequitable conduct counterclaim fails to state a claim upon which relief can be granted, particularly in light of the Federal Circuit's recent *en banc* opinion in *Therasense v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011), that markedly tightened the standard for establishing inequitable conduct. Under this new standard, Mr. Chen's conduct, as a matter of law, does not constitute inequitable conduct. The allegations of OWW's counterclaim also fail to meet the pleading requirements for inequitable conduct established by the Federal Circuit in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), because there are insufficient allegations of underlying facts from which it can be reasonably inferred that Mr. Chen knew of the falsity of the alleged material misrepresentation and deliberately made the misrepresentation with the specific intent to deceive the PTO. As to Mr. Chen's alleged misstatements, they were factually correct and, therefore, not misstatements. They are nothing more than arguments he made in response to positions taken by the PTO. Such arguments are not, as a matter of law, affirmative misrepresentations of material fact for the purpose of establishing inequitable conduct. Nor can Mr. Chen be accused of having the specific intent to mislead the PTO, because he disclosed the information OWW deems material. Consequently, OWW's inequitable conduct counterclaim should be dismissed, and its inequitable conduct affirmative defense should be stricken.

## II. ALPS' MOTION TO DISMISS OWW'S INEQUITABLE CONDUCT CLAIM SHOULD BE GRANTED

### A. The Standard For Determining Whether A Fed. R. Civ. P. 12(b)(6) Motion Regarding Inequitable Conduct Claims Should Be Granted

Like any other claim, an inequitable conduct claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Adaxis, Inc. v. Cepheid*, 2011 WL 374501,*3 (N.D. Cal. August 25, 2011). A claim is plausible on its face when the factual allegations of the pleading, when taken as true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

In *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009), the Federal Circuit affirmed that Fed. R. Civ. P. 9(b) sets the pleading requirements for an inequitable conduct defense or counterclaim. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Federal Circuit held that inequitable conduct "while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen,* 575 F.3d at 1326. The court went on to say that in "pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. With respect to pleading "knowledge" and "intent," which may be averred generally under Rule 9(b), a pleading of inequitable conduct "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with specific intent to deceive the PTO." *Id.* at 1328-29.

In deciding a Rule 12(b)(6) motion to dismiss, courts consider the allegations in the pleading, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic

document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999) (court can take judicial notice of public documents in considering a motion to dismiss); *Schism v. U.S.,* 185 F.3d 1368, 1374 (Fed. Cir. 1999) (in determining Rule 12(b)(6) motion, the court may consider matters of public record without converting to motion for summary judgment); *Haddad v. Dudek,* 2011 WL 1892322,*9 (M.D. Fla. 2011) ("Court may take judicial notice of and consider documents which are public records, that are attached to the motion to dismiss, without converting the motion to dismiss into a motion for summary judgment."); *Hollander v. Ranbaxy Labs., Inc.*, 2011 WL 248449,*3 (E.D. Pa. January 24, 2011) ("in deciding motions to dismiss pursuant to Rule 12(b)(6) . . ., courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

**B. The New Standard For Inequitable Conduct Under *Therasense, Inc. v. Becton, Dickinson and Co.***

In *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011), the Federal Circuit, sitting *en banc*, dramatically tightened the requirements for establishing inequitable conduct. The court noted its concern with the impact that inequitable conduct claims have had on both patent litigation and the patent system. It also said that a heightened standard was justified, because the remedy for inequitable conduct is the "atomic bomb" of patent law that can render an entire patent or even an entire family of patents unenforceable and destroy the reputations of the parties and attorneys involved. It noted that because of its far-reaching consequences, inequitable conduct had become a common litigation tactic that has plagued the courts and the entire patent system. *Therasense*, 649 F.3d. at 1288-89. As a result, the "court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290.

The court reaffirmed that to prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that a misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard is insufficient. *Id.* The accused infringer "must prove by clear and convincing evidence that the applicant knew of the reference, knew it was material, and made a deliberate decision to withhold it." *Id*. The Federal Circuit further stated that intent and materiality are separate requirements that must be proven independently and that the district court should not use a sliding scale where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa. Intent cannot be inferred solely from materiality. Thus, proving that the applicant knew of the reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive. *Id.* The court also said that because "direct evidence of deceptive intent is rare, the district court may infer intent from indirect and circumstantial evidence. . . . However, to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.' . . . Indeed, the evidence 'must be sufficient to *require* a finding of deceitful intent in light of all of the circumstances.'" *Id*. at 1290-91. Thus, if there are multiple reasonable inferences that can be drawn from the evidence, intent to deceive cannot be found. *Id.*

Perhaps even more significant was the Federal Circuit's narrowing of the materiality requirement. The court said "as a general matter, the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291. The court noted that while but-for materiality

generally must be proved to satisfy the materiality prong of inequitable conduct, it recognized an exception in cases of "affirmative egregious misconduct," in which the applicant has "'deliberately planned and carefully executed scheme[s]' to defraud the PTO and the courts." *Id.* at 1292. The court noted that filing an unmistakably false affidavit is an example of such misconduct that would be material. *Id*.

In a portion of its opinion that is highly pertinent to this case, the Federal Circuit expressly refused to adopt the PTO's Rule 56 (37 C.F.R. § 1.56(b)) as the standard for materiality. The current version of the rule that the Federal Circuit rejected provides that information is material if (1) it establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or (2) it refutes, or is inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the PTO, or (ii) asserting an argument of patentability. The court held that PTO Rule 56 is overly broad and would set "such a low bar for materiality, adopting this standard would inevitably result in patent prosecutors continuing existing practice of disclosing too much prior art of marginal relevance and patent litigators continuing to charge inequitable conduct in nearly every case as a litigation strategy." *Id. a*t 1294-95. Consequently, even if a patent applicant takes inconsistent positions in arguments it makes to the PTO to overcome a rejection or to support patentability, such arguments are not material for the purposes of determining whether the applicant is guilty of inequitable conduct.

Although *Therasense* was decided at the end of May of this year, district courts have already begun to assess its impact on the pleading standard for inequitable conduct set forth by the Federal Circuit in *Exergen*. In *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 2011 WL 3563112, *15-*16 (E.D. Va. August 12, 2011), the court, recognizing the heightened requirements for

showing inequitable conduct established by the Federal Circuit in *Therasense*, assessed its impact on inequitable conduct pleading requirements as follows:

> [t]he court finds that *Exergen* still states the correct elements required for pleading inequitable conduct after *Therasense*. A party must still "identify the specific who, what, when, where and how of the material misrepresentation or omission committed." . . . Additionally, a party must allege intent to deceive the PTO, such that the specific intent is plausible from the facts alleged pursuant to Rule 8(a). However, the court does note that after *Therasense*, a mere recitation that "X" individual, at "X" time, failed to turn over "X" information to the PTO that would have been material to the prosecution, with the specific intent to deceive the PTO, is insufficient under Rule 9(b). Instead, in alleging those elements, a party must make an *initial showing* from which it may be *plausibly inferred* that: (1) the individual knew of the information not disclosed; (2) the information not disclosed was but-for material to the prosecution of the patent; and (3) the intent to deceive is the single most likely explanation for the non-disclosure. (Emphasis added).

As will be shown below, when the requirements for establishing inequitable conduct set forth in *Therasense* and the pleading requirements set forth in *Exergen* are applied to OWW's inequitable conduct counterclaim and affirmative defense, it is abundantly clear that this claim should be dismissed, and its affirmative defense stricken.

**C. OWW Has Failed to State a Plausible Claim For Inequitable Conduct**

OWW has failed to state a plausible claim regarding Mr. Chen's alleged inequitable conduct. First, OWW's inequitable conduct counterclaim has not been pled with the particularity required by Fed. R. Civ. P. 9(b). Although OWW's counterclaim identifies the "who," John Chen, it in large part fails to explain "why" or "how" the material omissions or misstatements are but-for material as now required by *Therasense*. OWW also fails to allege facts from which the single most reasonable conclusion is that Mr. Chen intended to deceive the PTO.

In *Exergen*, 575 F.3d at 1329, the Federal Circuit said that a pleading does not meet the specificity requirements of Rule 9(b) when "the pleading fails to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material omissions." It also said that when a pleading states that withheld references "are 'material' and 'not cumulative to the information already of record,' . . . but does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record," the pleading fails to explain "why" the withheld information is material and not cumulative, and "how" the examiner would have used the information to assess the patentability of the claims. Such factual deficiencies are fatal under Rule 9(b). *Exergen*, 575 F.3d at 1329-30.

The first major problem with OWW's inequitable conduct counterclaim is that there is no allegation that Mr. Chen failed to disclose material information. Everything that OWW now complains about was part of the PTO record concerning the '568 patent. OWW's entire inequitable conduct claim is based on Chen's '176 patent, which was disclosed in both the prosecution of the original '568 patent application and in the reexamination proceeding. The second major problem with OWW's inequitable conduct claim is that the statements by Mr. Chen quoted by OWW in paragraphs 21 and 23 of its counterclaim as the basis for charging him with inequitable conduct are undeniably true. So, there is no factual basis alleged for Mr. Chen failing to disclose material information, and there is no factual basis alleged that he made an affirmative misrepresentation of a material fact. On this basis alone, OWW's inequitable conduct counterclaim should be dismissed and its affirmative defense stricken.

In paragraph 21 of its counterclaim, OWW sets out an argument Mr. Chen made in response to a double patenting rejection by the examiner based on the '176 patent.[3] Mr. Chen correctly pointed out that the claims of the '176 patent claim a crystal gel composition formed from block copolymers having mid-blocks comprising one or more substantially crystalline polyethylene midblock segments, or having mid-blocks having a crystallinity of at least about 20 mole % of – $(CH_2)^{16}$, whereas the claims of the '568 patent do not recite styrene block copolymers with one or more substantially crystalline polyethylene midblock segment, or with mid-blocks having a crystallinity of at least about 20 mole percentage sign of – $(CH_2)^{16}$. Because the claims of the '568 patent do not have limitations regarding the crystallinity of the midblock segment of polyethylene of the block copolymers used to make the gel composition, Mr. Chen was able to overcome the examiner's double patenting rejection. OWW does not allege that Mr. Chen made a misstatement or misrepresentation to the PTO in response to its double patenting rejection, nor could it. Mr. Chen's statement as to what is claimed in the respective patents is entirely accurate, which is something the examiner could easily determine by comparing the claims of the two patents.

OWW's inequitable conduct counterclaim also does not explain "how" or "why" this accurate statement could be but-for material in the reexamination proceeding. Although the claims in the reexamination proceeding have some minor amendments, none of the amendments speak to the crystallinity of the polyethylene midblock segment. Since the examiner was satisfied during the prosecution of the original application that Mr. Chen's arguments overcame his double patenting rejection, there was no reason to revisit this issue in the reexamination. There is no explanation in the counterclaim as to why Mr. Chen's completely accurate statements

[3] The '176 patent is attached hereto as Exhibit A.

about the differences between the claims of the '176 patent and the '568 patent, quoted in paragraph 21 of OWW's counterclaim, are material to the reexamination proceeding. There is no explanation as to why the claims of the '176 patent would make the claims of the '568 unpatentable in the reexamination proceeding, when the '176 patent had already been considered by the PTO during the prosecution of the original application when it allowed the original claims.

In paragraph 23 of its counterclaim, OWW quotes a statement made by Mr. Chen in the reexamination proceeding in which he states that U.S. Patent No. 5,633,286 ("'286 patent")[4] and the '176 patent "disclose SEEPS gel-fabric composites for medical cushioning use of the lower extremities leg, knee, ankle and foot." This is again an accurate statement. The '286 patent, which was filed in August of 1994, discloses using SEPTON 4055, a SEEPS block copolymer, to formulate a gel in constructing gel-fabric composite articles in connection with medical cushioning devices for the extremities leg, knee, ankle and foot (Column 7, lines 18-22, Column 10, lines 55-64). The '176 patent discloses that SEEPS block copolymers are among the polymers and copolymers identified as being appropriate for formulating a gel to be used in making a fabric covered gel liner for an amputation stump of a leg. (Column 11, lines 3-15, Column 12, lines 23-26 and 50-51, Column 22, lines 1-16, and Certificate of Correction, p. 6, corrected claim 9). Mr. Chen's statement, quoted in paragraph 23 OWW's counterclaim, is accurate.

OWW asserts in its counterclaim, however, that Mr. Chen's arguments concerning the '176 patent in the reexamination create an "inconsistency" with his previous discussion of that patent during prosecution of the original application, because Mr. Chen did not point out in the reexamination proceeding that the '176 patent only discloses the use of SEEPS in connection

[4] The '286 is attached hereto as Exhibit B.

with formulating the crystal gels described in the '176 patent. OWW speculates that if Mr. Chen had done so, the PTO would have concluded that the disclosures of the '176 patent do not support the claims of the '568 patent and, therefore, that the priority date for the '568 patent would have been its application date, April 21, 2003, rather than March 15, 1997, the application date of the '176 patent.

There is no "inconsistency," and even if there was an inconsistency, it would not be material under the Federal Circuit's *en banc* ruling in *Therasense.* The amount of polyethylene crystallinity of the midblock segment of the block copolymer(s) is irrelevant to the claims of the '568 patent, because those claims do not require any specific amount or degree of crystallinity; crystallinity is not a limitation of the relevant claims of the '568 patent. The '176 patent undeniably discloses using SEEPS in formulating an appropriate gel to use in constructing a fabric covered gel liner. Thus, as argued by Mr. Chen, it provides support for the claims of the '568 patent. In addition, the '286 patent, which has an even earlier application date of August 11, 1994, also discloses a SEEPS block copolymer, Septon 4055, among the block copolymer that can be used to formulate an appropriate gel composition to make fabric covered cushioning devices for the lower extremities. Furthermore, the '176 patent was disclosed to the examiner in the reexamination. He was free to accept or reject Mr. Chen's argument that the '176 patent disclosure supports the relevant claims of the '568 patent. Thus, OWW's inequitable conduct claim fails because Mr. Chen disclosed the very art on which OWW bases its argument, and because he made no misrepresentation of fact about it to the PTO in the reexamination proceeding. When all is said and done, OWW's theory of inequitable conduct is that Mr. Chen did not make an argument in the reexamination proceeding that OWW would have liked to have made had it had the opportunity to do so.

The allegations of OWW's inequitable conduct counterclaim do not provide a factual basis for concluding that Mr. Chen deliberately withheld information that was but-for material from the PTO during the prosecution of the '568 patent or the reexamination, that he made any affirmative misrepresentation of material fact, or that he engaged in affirmative egregious misconduct before the PTO. Consequently, OWW's inequitable conduct counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and its inequitable conduct affirmative defense stricken under Fed. R. Civ. P. 12(f).

**D. Because Mr. Chen Disclosed The Information Relied On By OWW In Asserting Inequitable Conduct, There Is No Support For The Inference That Mr. Chen Had The Specific Intent To Deceive The PTO**

There is no plausible or reasonable basis for concluding that Mr. Chen had the specific intent to deceive the PTO, because he disclosed the '176 patent in both the prosecution of the '568 patent application and in the reexamination. *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, 540 F. Supp. 2d 724, 730 (E.D. Texas 2008). *See also, Andrew Corp. v. Gabriel Elecs.,* 847 F.2d 819, 823-24 (Fed. Cir. 1988) (affirming district court's finding of no intent to deceive when prior art in applicant's possession was "disclosed generically in the patent application"); *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1568 (Fed. Cir. 1984) (description of a prior art device in the application is "inconsistent with intent to perpetrate a fraud on the PTO"). As noted in *Andrew Corp. v. Gabriel Elecs*., *supra*, and *Vandenberg v. Dairy Equip. C*o., *supra,* if information alleged to be material is disclosed even generically to the PTO during the prosecution of the patent, there can be no intent to deceive the PTO

Similarly, the arguments submitted by Mr. Chen during the prosecution of the '568 patent application are part of the PTO record of the original prosecution. When information has been disclosed in an earlier related proceeding, there is no obligation to resubmit it in a later

proceeding relating to the same subject matter. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998); *Bone Care Intern., LLC v. Penntech Pharm., Inc.*, 741 F. Supp. 2d 854, 859-61 (N.D. Ill. 2010); *eBay, Inc. v. IDT Corp.*, 2009 WL 2706395, at*3 (W.D. Ark. August 24, 2009) (granting motion to dismiss counterclaim of inequitable conduct where patentee had failed to resubmit in continuation application material information originally cited in ancestor application); *Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 443 F. Supp. 2d 1284, 1370 (N.D. Ala. 2009) (granting motion for partial summary judgment of no inequitable conduct where patentee had failed to resubmit material information in continuation-in-part application that was originally cited in ancestor application). Consequently, it cannot reasonably be concluded that Mr. Chen intended to deceive the PTO, because he failed to point out an argument that he previously made in an earlier proceeding relating to the very same patent.

In this case, no reasonable finder of fact could conclude that Mr. Chen had the intent to deceive the PTO. On this basis alone, OWW's inequitable conduct counterclaim should be dismissed and its inequitable conduct affirmative defense stricken.

**E. Mr. Chen's Alleged Misrepresentations Cannot Be The Basis For An Inequitable Conduct Claim, Because Attorney Arguments Are Not Affirmative Misrepresentations Of Material Fact For Purposes Of An Inequitable Conduct Claim**

OWW's assertion that the "inconsistencies" between Mr. Chen's argument in the prosecution of the '568 patent application and his later argument in support of the patentability of the claims of the '568 patent in the reexamination support an inequitable conduct claim is wrong, as a matter of law.

In *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1347-49 (Fed. Cir. 2007), the Federal Circuit held that statements made by the patentee or his attorney, attempting to distinguish claims from prior art or interpreting what the prior art discloses, do not constitute affirmative

misrepresentations of material fact, because the examiner is free to reach his own conclusions and accept or reject the patentee's arguments. *See also, World Wide Stationary Mfg. Co., Ltd. v. U.S. Ring Binder, L.P.,* 632 F. Supp. 2d 912, 915-16 (E.D. Missouri 2009). More recently in *Therasense*, the Federal Circuit, in rejecting the second prong of the PTO's definition of materiality in PTO Rule 56 (37 C.F.R. § 1.56(b)) as a standard of materiality for inequitable conduct, reaffirmed that statements made by an applicant or his attorney in an argument, concerning patentability or opposing an argument of unpatentability relied on by the PTO, are not material for the purpose of establishing inequitable conduct. *Therasense*, 649 F.3d at 1294-95. Such statements are not, as a matter of law, affirmative misrepresentations of material fact. As the Federal Circuit said in *Young:*

> The [patent] examiner had the [prior art reference] to refer to during the reexamination proceeding and initially rejected claim 1 based on that reference. [The prosecuting attorney] argued against the rejection, and the examiner was free to reach its own conclusions and accept or reject [the prosecuting attorney]'s arguments. We therefore fail to see how the statements in the October 2005 Response, which consisted of *attorney argument and interpretation of what the prior art discloses*, constitute affirmative misrepresentations of material fact.

*Young*, 492 F.3d at 1349 (emphasis added).

In the present case, the statements quoted by OWW in paragraphs 21 and 23 of its inequitable conduct counterclaim, are nothing more than Mr. Chen's arguments in response to positions taken by the PTO. In paragraph 21, Mr. Chen is arguing against the examiner's double patenting rejection based on the '176 patent. As in *Young*, the examiner had the '176 reference to refer to during the prosecution of the '568 patent application when considering Mr. Chen's argument. The examiner was free to reach his own conclusion and accept or reject Mr. Chen's arguments. Similarly, Mr. Chen's statement, quoted in paragraph 23 of OWW's counterclaim,

that the '176 patent discloses SEEPS block copolymers in connection with the construction of fabric covered cushioning devices for the lower extremities that supports the claims of the '568 patent is an argument that the examiner could accept or reject based on his own reading of the '176 patent. Because the examiner could make up his own mind about the merits of Mr. Chen's argument by reviewing a disclosed reference, there is no affirmative misrepresentation of a material fact.

The above statements in paragraphs 21 and 23 that OWW cites as the sole basis for its inequitable conduct counterclaim are nothing more than attorney argument. They cannot, as a matter of law, form the basis for an inequitable conduct claim and, therefore, OWW's inequitable conduct counterclaim should be dismissed and its inequitable conduct affirmative defenses should be stricken.

## III. CONCLUSION

Alps' motion to dismiss OWW's inequitable conduct counterclaim and to strike its inequitable conduct affirmative defense is well-taken and should be granted.

/s/ David W. Wicklund
David W. Wicklund (0012109)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
TEL: (419) 241-9000
FAX: (419) 241-6894
dwicklund@slk-law.com

Ronald A. Christaldi, Esquire
Florida Bar No. 0087025
rchristaldi@slk-law.com
Mindi M. Richter, Esquire
Florida Bar No. 0044827
mrichter@slk-law.com
Shumaker, Loop & Kendrick, LLP
101 East Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Telephone: (813) 229-7600
Facsimile: (813) 229-1660
Attorneys for Plaintiff, Alps South, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 31, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic filing to the following attorneys for Plaintiffs: Patrick J. Risch, Esquire, Hill, Ward & Henderson, P.A., 101 East Kennedy Boulevard, Suite 3700, Tampa, Florida 33601-2231; Jeffrey S. Standley, Esquire, F. Michael Speed, Jr., Esquire, and Michael Stonebrook, Esquire, Standley Law Group LLP, 6300 Riverside Drive, Dublin, Ohio 43017.

/s/ David W. Wicklund
David W. Wicklund (0012109)
SHUMAKER, LOOP & KENDRICK, LLP

Attorneys for Plaintiff,
ALPS South, LLC